NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| Robert Lee EDWARDS, pro se | : | |
| Plaintiff, | : | Civ. No. 09 - 3979 |
| v. | : | OPINION & ORDER |
| CORRECTIONAL MEDICAL SERVICES, et al | : | |
| Defendants. | : | |

THOMPSON, U.S.D.J.,

This matter comes before the Court upon Defendants Correctional Medical Services ("CMS") and David Meeker's Motion to Dismiss Plaintiff's Amended Complaint [Docket # 20], and Jon Corzine, George Hayman, Lydell Sherrer, Thomas Farrell, and Ralph Woodward's (collectively, the "State Defendants")[1] Motion to Dismiss Plaintiff's Amended Complaint [docket # 25]. This matter has been decided on the papers without oral argument. In the interest of expediency, the Court has chosen to rule on the two motions simultaneously. For the reasons stated below, Defendants CMS and David Meeker's motion is GRANTED IN PART and DENIED IN PART. State Defendants' motion is also GRANTED IN PART and DENIED IN PART.

**I.    Background**

---

[1] State Defendants are respectively Governor of the State of New Jersey, DOC Commissioner, DOC Acting Assistant Commissioner, DOC Assistant Director of the Division of Operations, and DOC Director of Medical Services. Plaintiff's Amended Complaint also named various individual CMS medical personnel. This Court terminated the DOC as a party on September 14, 2009 due to the fact that a state agency is not a "person" for purposes of Section 1983.

Plaintiff Robert Lee Edwards filed a complaint against Defendants CMS and the New Jersey Department of Corrections ("DOC") on August 10, 2009. On October 14, 2009, Plaintiff filed an Amended Complaint adding numerous additional parties, including Defendant David Meeker, CMS Vice President of Operations in New Jersey, and State Defendants. In Plaintiff's Amended Complaint, he alleges, pursuant to 42 U.S.C. § 1983 ("§ 1983") and the New Jersey Civil Rights Act, that Defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment and the New Jersey Constitution. (Am. Compl ¶¶ 1, 24.) He also alleges that Defendants are liable for various state law tort claims including breach of contract and negligent infliction of emotional distress. (*Id.* ¶¶ 40, 46.)

The following allegations are set forth in Plaintiff's Complaint and Amended Complaint.[2] For over ten years, Plaintiff suffered from severe back and leg pain that CMS medical staff treated with only heat packs and over-the-counter medication. (Compl. ¶ 7.) Despite numerous complaints that the treatment was not helping and that the pain was increasing, CMS refused to adjust his treatment or refer him to a specialist. When he was finally referred to specialist Dr. Pizzi, over ten years after his first complaint, he was diagnosed as having two degenerated discs and a bone spur pressing on his sciatic nerve, which Dr. Pizzi removed by surgery on October 9, 2008. (Am. Compl. ¶ 25.) He now suffers permanent physical impairment due to nerve damage, which he alleges could have been avoided with timely surgery. Defendants CMS, David Meeker, and State Defendants have moved to dismiss the claims against them pursuant to Fed. R. Civ. P. 12(b)(6).

---

[2] Plaintiff failed to include certain facts in his amended complaint that appeared in his original complaint. Because Plaintiff is proceeding *pro se*, the Court must read his complaint liberally. Therefore, the Court will consider facts included in both the Complaint and Amended Complaint.

**II.     Standard of Review**

In considering a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court must determine whether, considering the facts in the light most favorable to the non-moving party, the Plaintiff has alleged facts sufficient "to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). A claim is plausible if the plaintiff alleges enough facts for the court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *Id*. at 1949. In making this determination, "the District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-211 (3d Cir. 2009). The Third Circuit has instructed the district courts to read *pro se* complaints, especially civil rights complaints, liberally. *Spruill v. Gillis*, 372 F.3d 218, 236 n.12 (3d Cir. 2004).

**III.    Analysis**

   1.    Section 1983 Claim Against CMS

A private corporation may not be held liable under § 1983 based on a theory of *respondeat superior* liability. *Rode v. Dellarciprete,* 845 F.2d 1195 (3d Cir. 1988). Therefore, in order to hold CMS liable, Plaintiff must show that with "deliberate indifference to the consequences, the corporation established and maintained a policy, practice, or custom which directly caused [Plaintiff's] constitutional harm." *Carter v. Pa. Dep't of Corr.*, No. 08-0279, 2008 U.S. Dist. LEXIS 102016, at *22-24 (E.D. Pa. Dec. 17, 2008) (citing *Stoneking v. Bradford Area School Dist.*, 882 F.2d 720, 725 (3d Cir. 1989)).

Plaintiff has alleged that CMS is responsible for two policies.  First, he alleges CMS was "responsible for policies which systematically discourage[d] and prevented prisoners from seeking treatment for conditions such as back condition[s] by authorizing sick call screening staff to defer referring a prisoner to physician until he has complained at least three times." (Am. Compl. ¶ 25.)  Second, he alleges that CMS had a policy of "preventing prisoners from receiving timely diagnosis and treatment of their medical conditions by refusing to refer them to qualified specialists in order to save money." (*Id.* ¶ 27.)

Plaintiff's first allegation is insufficient to make out a claim against CMS.  Although Plaintiff claims that CMS had a policy of discouraging and preventing prisoners from seeking treatment, he does not allege that this particular policy discouraged *him* from seeking treatment for his back and leg pain.  On the contrary, Plaintiff indicates that for ten years he sought treatment for his pain.  He alleges that he submitted numerous "sick call slips" complaining about his pain and that he was treated, although inadequately, by CMS medical staff during this period.  (Compl. ¶ 4.)  Therefore, because Plaintiff has failed to allege that this policy caused his constitutional injury, and because causation is an essential element of a deliberate indifference claim, the Defendants cannot be held liable based on this theory.  *Carter*, 2008 U.S. Dist. LEXIS 102016, at * 22-24.

Plaintiff's second allegation is that CMS had a policy of refusing to refer prisoners to specialists in order to save money.  As evidence of this policy, he points to the fact that despite numerous "sick call slips," and complaints to CMS medical personnel, he was not referred to a specialist for over ten years.  He alleges that this delay

4

in adequate medical care constituted deliberate indifference to his serious medical needs. (Am. Compl. ¶ 7.) Deliberate indifference can be shown where "[p]rison authorities prevent an inmate from receiving recommended treatment for serious medical needs or deny access to [a] physician capable of evaluating the need for such treatment.'" *Monmouth County Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987). Plaintiff clearly had serious medical needs as evidenced by Dr. Pizzi's diagnosis and the subsequent surgery he underwent, and if the Court takes the factual allegations in Plaintiff's complaint as true, the Court can reasonably infer that the CMS policy resulted in Plaintiff being denied a referral to a physician capable of evaluating and diagnosing his condition. Although Plaintiff does not provide detailed factual allegations about the policy, the Third Circuit has instructed us to read *pro se* complaints liberally because of the informational disadvantage *pro se* plaintiffs face. *Spruill*, 372 F.3d 218, 236 n.12. Therefore, Plaintiff is entitled to engage in discovery in order to develop his claim, and CMS's Motion to Dismiss this claim is denied.

    2.    <u>Section 1983 Claim Against State Defendants and David Meeker</u>

Defendants argue that Plaintiff's federal and state claims must be dismissed because they are based on the theory of *respondeat superior* liability. Defendants argue that because Plaintiff has not shown that they were directly involved in Plaintiff's mistreatment, they cannot be held liable for deliberate indifference. State Defendants further contend that due to the fact that Plaintiff was being seen regularly by CMS medical staff, as well as the fact that State Defendants are non-medical personnel, the Court cannot reasonably infer that they were deliberately indifferent to Plaintiff's medical needs. *Id.* at 236 (holding a non-medical prison official cannot be held liable for

deliberate indifference unless they knew or had reason to believe that the prisoner was being denied adequate treatment); *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993).

However, there are two theories of supervisory liability under which individuals can be held liable. Although Defendants are correct that Plaintiff has not adequately alleged direct involvement in Plaintiff's mistreatment, a supervisor can also be held liable if he "implemented deficient policies and was deliberately indifferent to the resulting risk." *A.M. ex rel. J.M.K. v. Luzerne County Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004.) Plaintiff alleges that State Defendants had a policy of denying prisoners adequate medical care in an effort to save money. In support of this claim, Plaintiff alleges that the DOC entered into a contract with CMS, a corporation that they knew or should have known provided sub-standard medical care.[3] (Compl. ¶ 4.) Moreover, he alleges that as part of their cost-saving policy, the DOC Defendants made a conscious decision to delay referrals to specialists and physicians capable of correctly diagnosing patients. (Am. Compl. ¶ 25.) As evidence of this policy, he alleges that the DOC "circumscribed access to specialty care consultations by requiring a minimum number of prisoners to accumulate on a roster before scheduling the consultation." (*Id.*) He further alleges that this policy led to the ten-year delay in treatment by Dr. Pizzi, which caused him to endure "unnecessary and avoidable physical and emotional pain [and] aggravation of his medical condition." (*Id.*) Plaintiff makes a similar claim as to the existence of a CMS policy, as was discussed above.

---

[3] Plaintiff argues that the numerous lawsuits against CMS for sub-standard care should have put Defendants on notice that CMS provided inadequate medical care.

Plaintiff claims that State Defendants and David Meeker had policy-making authority within the DOC and CMS.  He states that George Hayman, Commissioner of DOC, was "responsible for promulgating all rules and regulations… [regarding] the adult correctional facilities in New Jersey" (Am. Compl. ¶ 7.); Lydell Sherrer, Acting Assistant Commissioner of DOC's Division of Operations, was responsible "for the development of policies…necessary to assure that prisoners [were] afforded the appropriate level of custody and safe care" (*Id.* ¶ 8.); Thomas Ferrell, Assistant Director of DOC's Division of Operations, was responsible for "monitoring contract compliance and establishing an adequate quality assurance plan" (*Id.* ¶ 9.); Ralph Woodward, DOC's medical director, was "responsible for assuring the prisoners receive[d] adequate medical care… and ha[d] final authority to resolve treatment related disputes between the DOC and [CMS]" (*Id.* ¶ 10.); and David Meeker, CMS Vice President of Operations in New Jersey, was responsible "for the effective and efficient delivery of healthcare services to all prisoners in… New Jersey…and responsible for the management of personnel and program operations." (*Id.* ¶ 13.)  Taking Plaintiff's factual allegations as true, the Court can reasonably infer that these Defendants were involved in the implementation of the allegedly unconstitutional policies.  However, the Court cannot make the same inference about Governer Corzine, absent further factual allegations concerning his role in connection with policy-making authority at the CMS or DOC.  Therefore, State Defendants' Motion to Dismiss is denied on behalf of Defendants Meeker, Hayman, Sherrer, Farrell, and Woodward and granted on behalf of Governor Corzine.

Plaintiff also brings a claim against Defendants pursuant to New Jersey Civil Rights Act, N.J. Stat. Ann. §10:6-1.  (*Id.* ¶¶ 38-39.)  Because courts have interpreted this

provision to have the same legal considerations as its Eighth Amendment counterpoint, the Court's reasoning in reference to the Eighth Amendment claim applies with equal force to this claim. *See Ross v. Monge*, No. 07-2693(RMB), 2009 U.S. Dist. LEXIS 38029, at *4 n. 4 (D.N.J. May 4, 2009); *Jumpp v. T.M. Power*, No. 08-4268(JLL), 2009 U.S. Dist. LEXIS 51269, at *10 (D.N.J. June 19, 2009).

        3.        Breach of Contract Claim Against CMS and State Defendants

Plaintiff attempts to hold CMS and State Defendants liable for breach of contract based on the contract CMS held with the DOC. Under New Jersey law, a third-party beneficiary has standing to sue only where that party is an *intended* beneficiary of the contract. *Rieder Cmtys. v. N. Brunswick*, 227 N.J. Super. 214, 222 (App. Div. 1988). Where Plaintiff fails to allege any facts to show that he is an intended, rather than merely an incidental beneficiary of the contract, New Jersey Courts have held that the Plaintiff lacks standing to sue. *Ali v. Dep't of Corr.,* No. 08-2425(FSH), 2008 U.S. Dist. LEXIS 96061, at *17 (D.N.J. Nov. 19, 2008). Here, Plaintiff alleges that he was an intended third-party beneficiary of the contract, but provides no evidence to support this allegation. (Am. Compl. ¶ 40.) *See Washington v. Corr. Med. Servs.*, No. 05-3715(AET), 2006 U.S. Dist. LEXIS 25127, at *16 (D.N.J. April. 28, 2006) (holding that inmates in the State correctional system were indirect beneficiaries of contract between DOC and CMS and had no standing to sue.) Therefore, Defendants' Motion to Dismiss this breach of contract claim is granted.

        4.        Tort Claim Against State Defendants

Plaintiff's Amended Complaint contains a claim against State Defendants for the negligent infliction of emotional distress. (Am. Compl. ¶¶ 46-47.) State Defendants

8

move to dismiss this claim alleging that Plaintiff failed to file a notice of tort claim, pursuant to N.J. Stat. Ann. § 59: 8-8a, prior to filing this action. (State Defs.' Mot. Dismiss 16.)  However, in his response, Plaintiff includes evidence that he filed this notice on November 18, 2008. (Pl.'s Resp. State Defs.' Mot. Dismiss.)  Therefore, taking Plaintiff's allegations as true, the claim cannot be dismissed based on this ground.

## IV. Conclusion

For the foregoing reasons, and for good cause shown, it is ORDERED that, on this 8th day of March 2010, Defendants CMS and David Meeker's Motion to Dismiss [20] is GRANTED IN PART and DENIED IN PART; and

It is further ORDERED that State Defendants' Motion to Dismiss [25] is GRANTED IN PART and DENIED IN PART; and

It is further ORDERED that Plaintiff's breach of contract claims are dismissed; and

It is further ORDERED that Defendant Jon Corzine is terminated as a party in this action.

*/s/  Anne E. Thompson*

ANNE E. THOMPSON, U.S.D.J.